UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ETALON IMOB S.R.L. and MAOR ZINGER

                                              Plaintiffs,

      -against-

LAWRENCE H. SCHOENBACH, THE LAW
OFFICES of LAWRENCE H. SCHOENBACH, PLLC,
INAH HOLDINGS, LLC, INTERNATIONS ASSETS
& HOLDINGS, LLC, and RICARDO LEON,

                                                Defendants.
------------------------------------------------------------------X

Index No. 12-CV-6868 (BSJ) (AJP)

*MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED ORDER*

*Preliminary Statement*

Defendants Lawrence H. Schoenbach, the Law Offices of Lawrence H. Schoenbach, PLLC, Ricardo Leon ("Leon"), Inah Holdings, LLC ("Inah"), and Internations Assets & Holdings, LLC ("Internations") submit this memorandum of law in opposition to the proposed order submitted by the plaintiff to the Court on September 19, 2012.  Defendants also submit this memorandum to provide additional information requested of them by the Court at the September 19, 2012 appearance before the Court.

*The Proposed Order Should Be Rejected.*

1.  *An Unlimited Attachment*. The first paragraph of the proposed order provides that "all assets of Ricardo Leon ("Leon"), Inah Holdings, LLC ("Inah"), and/or Internations Assets & Holdings, LLC ("Internations") found within the State of New York shall be attached." This is defective because the attachment statute requires that the order of attachment specify the amount to be secured by the order of attachment.  CPLR § 6211 ("It shall specify the amount to be secured by the order of attachment, including any interest, costs and sheriff's fees and expenses. . . .").

The purpose of the pre-judgment attachment procedure is to obtain security for the plaintiff during the pendency of the action by having the sheriff take possession or control of the property of the out-of-state defendant in an amount to secure a potential judgment against the out-of-state defendant.  Seigel, *New York Practice* § 313 at p. 499 (4th Ed. 2005).

Accordingly, it is improper -- indeed punitive -- to attach "all" property of the out-of-state defendant.

The other provisions for processing the attachment order also require that the order of attachment specify an amount.  *See, e.g*., CPLR § 6214(b) (person served as garnishee shall turnover funds to the sheriff " up to the amount specified in the order of attachment"); CPLR § 6214(c) (sheriff must notify defendants when the

sheriff has attached property "having value sufficient to satisfy the amount specified in the order of attachment"); CPLR § 6218 (moneys attached by sheriff shall be held for the benefit os the parties to the action in an interest-bearing account); CPLR § 6219 (garnishee statement to the sheriff can be limited to specification of property belonging to the defendant up to the amount of the attachment).

The plaintiffs should be required to specify the amount of the attachment that they are requesting *and* to justify that amount as having some reasonable relation to their actual prospects for recovery.  An unlimited attachment based on pie-in-the-sky numbers is improper.

2. *The Mandatory Undertaking*.  The proposed order omits the mandatory undertaking that is required by statute to protect the out-of-state defendants from any damages and costs, including attorney's fees, arising from the attachment in the event that the defendant prevails or it is later determined the plaintiff was not entitled to the attachment. The relevant section provides:

> *Undertaking*. On a motion for an order of attachment, the plaintiff *shall give an undertaking*, in a total amount fixed by the court, but not less than five hundred dollars, a specified part thereof *conditioned that the plaintiff shall pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property*, and the balance conditioned that the plaintiff shall pay to the sheriff all of his allowable fees. The attorney for the plaintiff shall not be liable to the sheriff

for such fees. The surety on the undertaking shall not be discharged except upon notice to the sheriff.

CPLR § 6212(b) (emphasis added).

3.  *The Preliminary Injunction Is Improper*.  The proposed order provides for a preliminary injunction and states "pursuant to CPLR § 6210, Leon, Inah, and/or Internations are hereby enjoined from making any sale, assignment, transfer or distribution of any property or assets within the State of New York pending further Order of the Court."  That is improper for several reasons.

First, the cited provision of the CPLR does not provide for the sweeping injunction requested by the plaintiffs.   Instead, the statutory provision gives the Court the power to restrain the transfer of assets held by an in-state *garnishee.*

CPLR § 6210 provides in relevant part:  "Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a *garnishee* as provided in subdivision (b) of section 6214.  (CPLR § 6210; emphasis added).

Since the sheriff can *only* make an attachment levy on property in the State or City of New York (CPLR § 6211(a)) and since the statute *only* authorizes an injunction against a garnishee (CPLR § 6210), the proposed order improperly seeks to extend the scope of the statute to cover potentially any existing or future property of the out-of-state defendants that would come, or even arguably would enter into, the State of New York.  "Because attachment is a harsh remedy, the

statute must be strictly construed in favor of those against whom it may be applied." *Encore Credit Corp. v LaMattina*, 05-cv-5442 (CSP) (E.D.N.Y. Jan. 18, 2005).

Thus, the proposed injunction would effectively preclude the out-of-state defendants from transacting *any* business whatsoever in the State of New York, regardless of the issues in this action or the amount involved. As mentioned during oral argument on September 19, 2012, Mr. Schoenbach has been representing Mr. Leon, the principal of Inha and Internations, for several years on other matters, and the proposed restraining order would effectively mean that Mr. Leon and his companies could not transact any future transactions in New York State.

Second, the plaintiffs did not seek this relief in the papers and did not give notice that they would be seeking such an injunction. As such, it is procedurally improper. But it also is improper substantively because a preliminary injunction requires a showing of the well-established elements of irreparable harm, a likelihood of success, and equities pointing in their favor. The plaintiffs do not seek to satisfy these elements. Indeed, they did not invoke Rule 65 of the Federal Rules of Civil Procedure as a basis for relief and plaintiffs' counsel specifically argued to the Court on September 19, 2012 that they do *not* have to satisfy these

elements because they were seeking an attachment, which is available to a plaintiff seeking money damages.

Although a preliminary injunction can be used to preserve assets as security for a potential money judgment, that requires evidence demonstrating that a party "intends to frustrate a judgment by making it uncollectible." *Encore Credit Corp. v LaMattina*, 05-cv-5442 (CSP) (E.D.N.Y. Jan. 18, 2005) (citing *Republic of Philippines v. Marco*, 806 F. 2d 344, 356 (2d Cir. 1996): *Signal Capital v. Frank*, 895 F. Supp. 2d 62, 64 (S.D.N.Y. 1995). No such evidence is offered here to support that claim and therefore the Court should not grant the injunctive relief.

Third, an injunction and the demand for an order that the out-of-state defendants produce volumes of documents within 14 days raise constitutional issues because there has been no showing that the plaintiffs have obtained proper service of process on the out-of-state defendants. And, as mentioned during oral argument, the plaintiffs, by their own admission, waited 19 months before bring an action to recover the $150,000 processing fee and thus are now in no position to demand anything immediately.

Leon resides in Switzerland and the companies are located in Florida. According to the affidavits of service filed with the Court, Leon was served by mail and email (Docket # 5) based on a claim by the plaintiffs that they did not know that he lived in Switzerland and that therefore service of process need not

proceed through the Hague Convention.  Leon objects to this and asserts that there is no personal jurisdiction over him.

The out-of-state defendants also assert lack of personal jurisdiction because it is far from clear that any of the out-of-state defendants have the required contacts with New York to sustain personal jurisdiction.  Several courts have held that "wiring of money into New York State is insufficient, by itself, to confer personal jurisdiction under CPLR 302 (a) (1)." *Symenor v. State Street Bank,* 244 A.D.2d 880, 881 (4th Dept. 1997) (citing *Continental Field Serv. Corp. v ITEC Intl.,* 894 F. Supp. 151, 154 (S.D.N.Y 1995)); *Colson Servs. Corp. v. Bank of Baltimore,* 712 F. Supp. 28, 31 (S.D.N.Y 1989); *cf., Black Riv. Assocs. v Newman,* 218 A.D. 2d 273 (4th Dept. 1996); *see also Baptichon v. Nevada State Bank*, 304 F. Supp.2d 451 (S.D.N.Y. 2004).

In addition, Judge Rakoff's decision in *Semi Conductor Materials v. Citibank Int'l PLC*, 969 F. Supp. 243 (S.D.N.Y. 1997), is instructive because there the defendant received a fee from a New York bank for a foreign letter of credit transaction, and Judge Rakoff held that that fact was not sufficient to constitute either doing business or transacting business in the State.

The wiring of the processing fee in this case into the New York escrow account appears from the face of the complaint and the moving papers to be the out-of-state defendants' only relevant contact with this State related to the

plaintiffs' claims. The plaintiff's other, generic claims about contacts with New York appear to relate to the plaintiff's contacts or the presence of the escrow agent in New York. Thus, there is a significant issue whether the Court has jurisdiction. *Id.; Faravelli v. Bankers Trust Co.*, 85 A.D. 2d 332, 447 N.Y.S.2d 962 (1st Dept. 1982)(non-domiciliary not subject to personal jurisdiction where the real nexus of the transaction was not New York and "[t]he mere mailing from India of a draft together with documents to a New York bank for payment does not constitute transacting business within New York), *aff'd*, 59 N.Y.2d 615, 463 N.Y.S.2d 194 (1983); *DirectTV Latin America, LLC v. Park 610, LLC,* 691 F. Supp. 2d 405, 424 (S.D.N.Y. 2010)("Even if some individuals received kickbacks from cash wired into and out of a bank account at a New York bank, the payments to these persons "could have been made anywhere and it would not have changed the nature of the plaintiffs' allegations.")

Finally, the discovery demanded from the defendants effectively gives the plaintiffs all the discovery that they could be entitled to in the event that they were to prevail and actually obtain a judgment. But the plaintiffs have not even produced evidence that is likely or probable that they will prevail on the merits and yet plaintiffs – who sat on their rights for 19 months – demand immediate and total financial discovery on the defendants' assets at the very outset of the case. Indeed,

the discovery requested is *not* even in aid of attachment because it is not limited to the assets that could be subject to an order of attachment, i.e., assets in New York.

## *The Question By the Court*

During the September 19, 2012 appearance the Court asked for certain information about the out-of-state defendants' New York assets and I informed the Court that I would determine the answer and report back. Based on my very quick investigation over the past two days, I understand that the only assets that the out-of-state defendants have been able to locate in New York other than the small amounts remaining in Mr. Schoenbach's escrow account, is a small balance of less that $100 in a dormant account with Woori America Bank in the name of Internations Assets and Holding LLC. While the out-of-state defendants may have or want to have future transactions in or through New York, at this time I am unaware of any other New York existing assets.

## *Conclusion*

The Court should reject the proposed attachment order, should reject the request for a preliminary injunction and should reject the request for extensive expedited discovery.

Dated: September 21, 2012

s/NBS

_____
Nathaniel B. Smith