```
C9JAAETAO                      Order to Show Cause

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ETALON IMOB S.R.L. ET AL.,

 4              Defendants,

 5         v.                              12 CV 6868 (BSJ)

 6   SCHOENBACH, ET AL.,

 7              Defendants.

 8   ------------------------------x
                                           New York, N.Y.
 9                                         September 19, 2012
                                           3:10 p.m.
10
     Before:
11
                       HON. BARBARA S. JONES,
12
                                           District Judge
13
                             APPEARANCES
14
     VANDENBERG & FELIU, LLP
15        Attorneys for Plaintiffs
     BY:  JEFFREY E. GROSS KATHLEEN GARDNER
16
     NATHANIEL B. SMITH
17        Attorney for Defendants

18

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

1              (Case called)
2              MR. GROSS:  Jeffery Gross, for the plaintiffs.
3              MR. VANDENBERG:  Raymond L. Vandenberg, for the
4     plaintiffs.
5              MS. GARDNER:  Kathleen Gardner, for the plaintiffs.
6              MR. SMITH:  Nathaniel Smith, for the defendants.
7              THE COURT:  All right.  We're here on an order to show
8     cause for an attachment and I have heard nothing from the
9     defendants, obviously, so why don't you start.
10             MR. SMITH:  I have an application, your Honor.
11    Yesterday I spoke with opposing counsel.  What I want is two
12    weeks in which to put in opposition papers to the motion and I
13    am thinking, frankly, since many of the complaints are many of
14    the causes of action -- that perhaps that motion should address
15    that as well.  But I recognize that the plaintiff believes that
16    there's hundreds of thousands of dollars in New York in
17    Mr. Schoenbach's escrow account.
18             Incidentally, as your Honor may know, Mr. Schoenbach
19    would be here but he is in, I believe in Ecuador right now on a
20    CJA related case.
21             THE COURT:  Yes, I am aware of that.
22             MR. SMITH:  I just wanted to say that because it's not
23    like he is ducking and hiding.  We're colleagues.
24             THE COURT:  Yes.
25             MR. SMITH:  Anyway, so, I've provided to opposing

1   counsel a declaration by Mr. Schoenbach and I'll post it on ECF
2   when I have a chance.  Basically, what I've done is gone
3   through, Mr. Schoenbach and I have gone through his escrow
4   account and accounted for all of the money that came into his
5   escrow account and related to this transaction in 2011 and all
6   the monies that came in and out in 2012.  And the bottom line
7   is -- I could handle up an affidavit of Mr. Schoenbach.  Be
8   happen fee do that.  The bottom line is that net net
9   Mr. Schoenbach has $45 remaining in his escrow accounts today
10  that relates to this transaction.  In fact, he has made $900
11  total in his escrow account for all of his client funds.
12          And I bring that up now because important that the
13  Court know that my request for an adjournment is not going to
14  really unduly prejudice the plaintiff's here.  If there was
15  some boat in a dock and it was about to set sail for the far
16  seas, maybe two weeks would be unreasonable.  But there's no
17  real he is assets here except for the $45 to attach.  And so
18  that's why I am requesting the time to put in more formal and
19  more complete papers on why the motion should not be granted
20  and I've also attached Mr. Schoenbach's bank statements from
21  his escrow account to the affidavit.
22          THE COURT:  All right.  I'll hear from plaintiff.
23          MR. GROSS:  Sure.  Your Honor, having received this
24  declaration there's a number of things that it does not
25  address, a number of problems that it raises.  First of all,

1   this is a motion that is directed towards all three, actually,
2   all four or five defendants here, Ricardo Leon, the principal,
3   two companies that he controls.
4            THE COURT:  Am I right that except for Mr. Schoenbach
5   the rest of the defendants reside in Florida if reside is the
6   right word?
7            MR. GROSS:  Yes.
8            MR. SMITH:  Or Switzerland.
9            MR. GROSS:  Yes.  So that is why under the CPLR there
10  are foreign defendants who have assets and we have not heard
11  either from counsel now or in his declaration, anything about
12  the assets of those other defendants.  We've put in our papers,
13  we attached purported bank documents from Wachovia bank that
14  was involved that may well be located in New York.  And we
15  certainly haven't heard any representation on behalf of these
16  other defendants saying anything about the assets that they
17  have in New York or otherwise.
18           So we, certainly, have a cause for concern that
19  outside of Mr. Schoenbach the other defendants should be at a
20  minimum even if Mr. Schoenbach wants some additional time to
21  put in some more formal papers, at least pending those papers
22  coming in in a resolution it seems appropriate that those other
23  defendants should be temporarily pending, you know those papers
24  coming in, being restrained from transferring or dissipating
25  any assets they do have in New York cause the papers that we

1    just saw and will soon be filed on ECF raise some very serious
2    questions.  Because as we submitted in our papers $100,000 was
3    submitted into Mr. Schoenbach's escrow account and under that
4    the contract which is Exhibit C to both our complaint and the
5    or order to show cause affidavits it should be issued only for
6    the purpose of paying fees relating to a $25 million standby
7    letter of credit.
8              THE COURT:  What was the date of that hundred thousand
9    dollars --
10             MR. GROSS:  The contract was signed in April 5, 2012
11   and the money went in thereabouts in early April or late March
12   2012.
13             THE COURT:  All right.
14             MR. GROSS:  And under the contract not only is it to
15   be earmarked for that purpose but the contract provides that
16   any payment or transfers to that money, the documentation of
17   which is supposed to be immediately provided to my clients.
18   And what we received just now attached to this declaration is
19   that rather than some notation that explains why this money was
20   dissipated, bank records that show that it was dissipated in a
21   series of transfers ranging from five thousand, ten thousand,
22   15 thousand with no explanation other than per instructions of
23   R. Leon.
24             So this is very troubling that here the escrow agent
25   who is holding money on behalf my client with very specific

1   instructions, instructions to explain what is happening to this
2   money just simply, according to the attorney's own bank
3   records, just transferred it without providing explanation to
4   the client as per the instructions of Mr. Leon.  And they say
5   these transfers took place from, I believe April to June of
6   2012 in several different tranches.  So it is very troubling
7   that when somebody is subject to contractual fiduciary duties
8   that this money was transferred it -- in that manner.  And so
9   for those reasons and given the absence of any compelling
10  explanation even in the declaration, there is no explanation
11  about why the money was transferred, whether my client was ever
12  told what was the reason, who was the recipient.  The bank
13  records don't even say who the recipient was.
14          And so what we have is very a token amount of
15  information.  And we don't want there to be any delay.  And I
16  guess to that end I would raise one other point which is here
17  we have an affidavit on behalf of Mr. Schoenbach.  We've
18  heard -- there is no declaration yet from the other client.
19  There's no information about them.  And to the extent that
20  Mr. Schoenbach's -- if his bank documentation says he
21  transferred money per the instructions of Mr. Leon, that raises
22  an issue or a concern that, ultimately, Mr. Schoenbach's
23  defense will be, I was following the instructions of my client,
24  Mr. Leon.  And if that's the case then that would seem that
25  there is the potential for a conflict if one attorney is going

1    to be representing all of these defendants.

2              And so I just raise that, obviously, it's for counsel
3    to make the professional decision on his own but we don't want
4    there to be any delay down the road should there suddenly be a
5    decision that the opinions of Mr. Schoenbach and his clients
6    become divergent.  We wouldn't want there to be a delay down
7    the road.

8              So for those reasons we respectfully request that to
9    the extent that there's any brief adjournment of this hearing
10   pending any further papers that, A, all the defendants be
11   restrained from, all the defendants referring to Mr. Leon and
12   Internations be restrained from transferring or dissipating any
13   assets that they have in New York regardless of what financial
14   institution or agent they're sitting in.  But also that
15   preliminarily be given the information that we've requested in
16   our motion about the nature of their assets and what assets may
17   be subject to attachment in New York pursuant to CPLR 6220,
18   seems only fair that if the defense are asking for some more
19   time they should use that time to provide us some of that
20   meaningful information rather than just telling us the money
21   when out and not telling us where it went and why

22             THE COURT:  All right.  Thank you.

23             Mr. Smith, the object here is since we're dealing with
24   citizens outside of New York even though it's foreign, if you
25   will, even though it's Florida.  The issue here is what assets

1  are there in New York that could satisfy a judgment in this
2  case?
3              MR. SMITH:  Your Honor, I'd be perfectly candid with
4  you.  I don't know the answer to that.  The way I read this
5  application was that it was a request for an order of
6  attachment of, as I think all orders of attachment must be, of
7  specific property within the jurisdiction of the Court.  The
8  only asset they identified was Mr. Schoenbach's escrow account
9  which is where all this money came in and where it went out
10 which cannot be a surprise to them.
11             But in any event, now they're asking basically for a
12 different kind of relief.  They're asking for an injunction
13 restraining the transfer of any assets that are in the
14 possession or control of any of the defendants in the state of
15 New York anywhere.  And that's slightly different, actually,
16 very different relief.  And I am not in a position getting
17 retainer agreement two days ago, a client getting the papers
18 five days ago.  I am not in a position to say there are or
19 there are not any assets.  I mean Mr. Schoenbach works for
20 Leon.  That's one of his clients.  So I mean he has the
21 potential assets.  Every time he bills that client on unrelated
22 matters there is asset.  So I would want to be very careful
23 about making any kind of representation.
24             THE COURT:  I'm not asking about Mr. Schoenbach.  I'm
25 asking about the others.

1          MR. SMITH:  I understand.  I just use that as an
2     example because I am thinking about Mr. Schoenbach because I
3     know, for example, he has done work for Mr. Leon on his
4     companies on other matters and so there's potential dealings
5     here in New York.  There's potential other monies.  The way I
6     read this order of attachment was they're seeking specific
7     order of attachment which is, basically, a direction by the
8     Court to tell the sheriff to go pull out money from specific
9     designated accounts.  And so far as I can see, the accounts
10    that they've designated are Mr. Schoenbach's escrow accounts.
11    Now they're coming in and saying, well, there's a little bit
12    more than that.  But, frankly, their own papers layout the
13    whole history of the case which is that in 2011 they hire
14    Mr. Leon to grace -- they wired him $150,000.  So for 2011
15    those monies went in and went out in 2011.  And in their own
16    papers they acknowledge that Mr. Leon according to them
17    breached that obligation 19 months ago.
18          The second piece of this is $100,000 loan that was
19    given to or by one of the defendants given to one of the
20    plaintiffs, from one of the plaintiffs to one of the
21    defendants, another $1,000 to aid him in getting this
22    transaction done.  And according to their papers that
23    obligation was breached four months ago.
24          I am raising all of these points here, your Honor,
25    because if they're seeking some sort of injunctive relief then

1  latches is ringing loud and clear.  According to their papers
2  the defendant, the principle defendants, the out-of-state
3  defendants breached their contractual obligations four months
4  ago and 19 months ago and I think that they can't come into
5  court and be making claims about immediate relief under those
6  circumstances.
7            THE COURT:  Excuse me a minute.
8            (Pause)
9            THE COURT:  All right.  I'll hear from you, Mr. Gross.
10           MR. SMITH:  I just have one more point, your Honor.
11           Mr. Gross said something about oh, it's a terrible
12 thing about Mr. Schoenbach disbursing funds in violation of the
13 escrow agreement.  That's just unfounded.  The escrow agreement
14 gives Mr. Schoenbach and attached to their papers paragraph
15 four it says Lawrence H. Schoenbach, Esq. Law offices of
16 Lawrence H. Schoenbach, acting as the attorney escrow agent for
17 the transaction, shall only in accordance with the written
18 instructions of in a holding, etc., distribute the funds
19 pertaining to this escrow agreement.
20           They knew that Mr. Schoenbach was the escrow agent,
21 was holding the funds and that he was going to be disbursing
22 the funds pursuant to instructions from the other clients
23 they're suing.
24           THE COURT:  I am not here to decide on the merits of
25 those actions right now.  The question before me is whether or

1   not plaintiffs have proven that they have a right to be
2   concerned about being able to attach enough assets to pay the
3   debt should one occur in the judgment when this lawsuit is
4   finally decided and that's all I am here for.  And you don't
5   know what assets your clients have in New York, correct?
6           MR. SMITH:  Well, I mean I know what you have -- you
7   are talking about the foreign defendants?  Yes.
8           THE COURT:  Yes.
9           MR. SMITH:  I do not know -- untaken to do that kind
10  of analysis but I will respectfully submit, your Honor, that
11  the burden was on them to identify the assets unless they want
12  to get an injunction they have to make a completely different
13  analysis.  You are entitled to under the CPLR to get an order
14  of attachment if the Court thinks it's a good idea and if you
15  can show that one of the defendants is a foreign defendant and
16  if you have a valid cause of action.  Well, that's a completely
17  different standard from getting an injunction which requires
18  irreparable injury.  This is a breach of contract case.  It
19  requires that you move promptly.  They didn't.  They sat on
20  their rights for nine or 14 months.
21          So I think that, respectfully, it's a different
22  question.  I think the question here is they came into court
23  saying we want this money that's in Schoenbach's account.  I've
24  shown it doesn't exist except for $45 and I need two weeks to
25  marshal some facts, to respond to their allegations and the

1    Court's question.  I don't know what else to say.
2              THE COURT:  All right.
3              MR. GROSS:  Your Honor, I'd like to briefly address --
4    I mean, we've heard counsel talk about notions of irreparable
5    harm.
6              THE COURT:  No.  No.
7              MR. GROSS:  Secondly, I'd like to point out that under
8    the New York attachment procedures, one of the reasons why
9    provision 6220 is out there for disclosure is when you know
10   that somebody has some property in New York but you don't know
11   everything about it but it is a remedy to be able to give you
12   right away at the early stage of an attachment disclosure by
13   any person of information regarding any property in which the
14   defendant has an interest or any debts owing to the defendant.
15             So the purpose of that is that as a plaintiff you
16   don't have to be a omniscient to know I have exact information
17   about what every asset is in there.  You have enough to know
18   that they have some assets and good faith basis to bring your
19   motion.  But you are entitled to disclosure under 6220 to help
20   right away you get enough information to be able to attach all
21   of the appropriate sources in New York.
22             THE COURT:  All right.  Mr. Smith, or I guess I should
23   really be talking to Mr. Gross.  You want me to restrain the
24   defendants from transferring any assets, correct?
25             MR. GROSS:  Yes.

1      THE COURT:  Essentially that is the injunction you are
2  asking for, if you want to you call it an injunction.
3      MR. GROSS:  Right.  I'm not going so far as to ask for
4  Mr. Schoenbach to have to -- he has to restrain personal assets
5  cause he is a New York resident.  But with respect to the other
6  defendants, yes.
7      THE COURT:  Only the others, yes.  That's what I was
8  talking about.  And then you want to proceed and get disclosure
9  of the assets for the foreign defendants, correct?
10     MR. GROSS:  Correct.
11     THE COURT:  All right.  And I gather you are not
12  agreeing to Mr. Gross' proposal of two weeks so that he can
13  submit some paper, correct?
14     MR. GROSS:  That's correct, your Honor.
15     THE COURT:  All right.  Do you have a proposed order
16  for me?
17     MR. GROSS:  No.  I'd be willing to get you one later
18  this afternoon but, no, I do not have one.
19     THE COURT:  All right.  I am inclined -- I am not
20  ruling at this moment.  I am inclined to grant a motion to
21  restrain the foreign defendants from transferring any assets
22  out of New York and I'd like a proposed order which would cover
23  that as well as the other provision for disclosure.  I am still
24  going to take it under consideration.
25     And look, Mr. Gross, I am sympathetic that you've only

1   just been retained in this case but as I said before, the focus
2   here is really all about assets, whether or not the claims look
3   like it's meritorious.  All I can do for that at the moment is
4   read the complaint.
5           Has the plaintiff shown that they have a right to be
6   concerned about not being able to recoup their debt here if
7   there's a judgment?
8           Your focus -- and I'd like you to respond to this as
9   quickly as possible -- should be one that tells me that while I
10  suppose you may want to attack the -- of the complaint, that's
11  fine.  But the bottom line is I don't expect an extensive
12  motion to dismiss by any means.  But what you really should be
13  telling us here is that there is no reason not to think your
14  clients aren't going to have the assets which can be obtained
15  here in New York.  That's the focal point.  That's why when you
16  have foreign citizens or domiciliaries you look for what assets
17  they have in New York.  So with that as a focus I think you
18  should be preparing a response.
19          In the interim, however, I am inclined to grant
20  restraining order which would prevent your foreign clients from
21  transferring any assets out of New York.  And I've also
22  considered in ordering that you provide the information, get
23  the information from your clients and they provide the
24  information as to where their assets are here in New York.
25          MR. SMITH:  Your Honor, may I make a suggestion

C9JAAETAO                         Order to Show Cause

1   that --

2           THE COURT:  Sure.

3           MR. SMITH:  -- which is give me a chance, a few days

4   to find out whether or not -- I mean my supposition but it's

5   mere supposition -- is that these foreign defendants don't have

6   any assets other than what Schoenbach was holding in his escrow

7   account.

8           THE COURT:  Well, you know what?  This may well be

9   true in which case their concerns are pretty sensible ones.

10  But in the interim I would not want them moving them out of New

11  York.  Now, the question really is, have they shown me enough

12  to be for cause of concern?  Look, the complaint is what the

13  complaint is and if they prevail and they'd be entitled to

14  those monies and with the exception of Mr. Schoenbach whom I am

15  sure or at least I assume is a New York domiciliary if he works

16  here.

17          MR. SMITH:  Garden City.

18          THE COURT:  Yeah.  He is going to be here and I would

19  not -- I doubt I'd grant an attachment with him of his personal

20  assets and nor is the plaintiff asking for those.

21          With respect to the escrow account, that may be a big

22  issue as to whether those monies were monies that were expended

23  without the client knowing exactly what they were being spent

24  for.  But that's not my issue at the moment.  And the focus has

25  to be on your four foreign clients and I've told you what my

1    inclinations are.  I am not ruling.  I'd like to see a proposed
2    order from the plaintiffs and I think the sooner you get some
3    response into this the better.
4              How much time do you want?  I mean it's quite possible
5    you could persuade me to change course here and lift the
6    restraints if that's indeed what I decide to do.  But I haven't
7    heard anything to give me any comfort.
8              MR. SMITH:  Well, I mean, judge, respectfully, I
9    disagree that the Court's review of the case is limited to
10   reading just the allegations of the complaint.  If they want to
11   get any kind of restraining order, a temporary restraining
12   order or in this case a preliminary injunction, there are
13   standards that have to be met.  They have to show clear right
14   to relief.  The way I read this complaint is it's, basically, a
15   breach of contract case that's dressed up as a fraud.  And they
16   attach an escrow agreement which gives the escrow agent the
17   right to transfer the funds.  So I think the whole case just
18   falls apart.  And I think that's relevant to an analysis about
19   whether or not the Court should grant injunctive relief because
20   likelihood of success on the merits is one of the key factors
21   here.  They haven't shown any reason to think that the
22   defendants who are foreign have done anything to secret assets,
23   which is a separate way of getting an order of attachment.
24             THE COURT:  Yes, it is.
25             MR. SMITH:  They're trying to sort of like blend like

1    three different provisions of the CPLR to get what they want.
2            THE COURT:  All right.  This is fine.  I need
3    information from you.
4            MR. SMITH:  I need time in which to get it.  I mean
5    I've got a Swiss resident and Schoenbach's in Ecuador.  I am
6    asking for two weeks here.  They sat on their rights for over a
7    year for one of these claims.  I don't think I am being
8    unreasonable in asking for two weeks.  They haven't
9    demonstrated any irreparable injury from two weeks for me to
10   put in papers to respond to all these issues.
11           THE COURT:  Well, you can have your two weeks and I'll
12   consider the argument you've just made and I'll take a look at
13   your proposed order and make the final ruling, okay.
14           MR. SMITH:  All right.  Okay.  Thank you, your Honor.
15           THE COURT:  You get it in sooner the better.
16                           (Adjourned)