UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
:
ETALON IMOB S.R.L. and MAOR ZINGER, :
:
              Plaintiffs, :
: 12 Cv. 6868(BSJ)
         v. : **Memorandum and Order**
:
LAWRENCE H. SCHOENBACH, et al., :
:
              Defendants. :
------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    On September 11, 2012, Plaintiffs filed a motion <u>ex parte</u> seeking an Order to Show Cause as to why this Court should not grant an order pursuant to Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6211, attaching all assets of Defendants Ricardo Leon ("Leon"),[1] Inah Holdings, LLC ("Inah"),[2] and Internations Assets & Holdings, LLC ("Internations") (collectively the "Leon Defendants").[3] This Court granted that motion on September 11, 2012, and the parties appeared before

---

[1] Leon is alleged to be a citizen of Florida. (Compl. ¶ 10.)

[2] Inah is alleged to be a limited liability company organized under the laws of Florida with its principal place of business in Miami, Florida. (Compl. ¶ 8.)

[3] Internations is alleged to be a limited liability company organized under the laws of Florida with its principal place of business in Miami, Florida. (Compl. ¶ 9.)

1

the Court on September 19, 2012, to be heard regarding the Plaintiffs' motion for an attachment.

At the Court's request, Plaintiffs submitted a proposed order after the hearing that attaches all assets of the Leon Defendants found within the State of New York[4] and orders the Leon Defendants within 14 days to produce information regarding any property in which any of the Leon Defendants maintains an interest. All Defendants oppose granting this order and argue that the Court does not have personal jurisdiction over the out-of-state defendants, the Leon Defendants have no material assets in New York,[5] and Plaintiffs' proposed order is deficient.

## FACTS

Plaintiffs in this action are commercial real estate developers who sought $45 million of financing from Defendants in 2010. (Compl. ¶ 16.). In 2011, Plaintiffs entered into an agreement, which provided, inter alia, that Internations would secure the financing in return for Plaintiffs' payment of a processing fee of $150,000 and servicing fees upon funding. (Id. at 22.) On January 7, 2011, Plaintiffs paid the processing fee.

---

[4] The Court notes that the proposed order did not specify the amount to be secured by attachment, nor did the order seek to attach any assets of the Defendants Lawrence H. Schoenbach and the Law Offices of Lawrence H. Schoenbach, PLLC, (collectively the "Schoenbach Defendants") beyond an account held in escrow by the Schoenbach Defendants for the Leon Defendants.

[5] In response to the Court's inquiry at the hearing, counsel for Defendants represented that any relevant assets held in New York are de minimis.

2

(Id. at ¶ 26.) Later that month, the funds were transferred to defendant Lawrence Schoenbach ("Schoenbach")[6] to hold in escrow.[7] (Id. at ¶ 26.)

On January 21, 2011, Schoenbach wrote to Plaintiffs to confirm his designation as escrow agent and reaffirmed his obligation to hold the funds paid by Plaintiffs. (Id. at ¶ 27-29.) Following this confirmation, Schoenbach informed Plaintiffs that he had obtained a verified Standby Letter of Credit (SBLC) from the Bank of Dubai Kenya Ltd. for $150,000. (Id. at 29.) Plaintiffs later advanced an additional $100,000 requested by Defendants to pay a processing fee relating to an additional SBLC, this time, from the Bank of India. (Id. at 30.) Including other incidental fees and expenses, Plaintiffs claim to have transferred a total of $325,000 to Defendants in the effort to secure the $45 million in financing. (Id. at 33.)

On or about April, 5, 2012, Plaintiffs entered into another agreement ("Loan Agreement") with Leon and Inah, in which Plaintiffs agreed to provide a loan of $100,000 to secure an SBLC for $25 million. (Id. at 35-37.) Per the agreement, Plaintiffs deposited an additional $100,000 in Schoenbach's

---

[6] Schoenbach is alleged to be a citizen of New York. (Compl. ¶ 11.)

[7] Most of Plaintiffs' subsequent dealings were executed through Schoenbach, who was named as legal counsel and a member Defendants' investment "Team." (Compl. ¶¶ 3, 20.)

3

escrow account, who was to use the funds only to secure the SBLC. (Id. at 37, 41.) The agreement also provided that, in the event of a default, Inah and Leon would be required to repay the $100,000 plus the $325,000 originally advanced by Plaintiffs. (Id. at 39.) If Defendants did not remit these funds after a default, the agreement directed Schoenbach to execute the $150,000 SBLC from the Bank of Dubai Kenya Ltd.[8] (Id.)

Despite these actions, Plaintiffs never received any financing from Defendants. (Id. at 45-46.) In May 2012, Plaintiffs declared that an Event of Default had occurred under the Loan Agreement and demanded that Schoenbach return the funds as provided in that document. (Id. at 49.) Schoenbach refused. (Id. at 50-51.) Plaintiffs have yet to receive any repayments from Defendants and brought suit to recover the monies to which they claim they are entitled. Plaintiffs now seek an Order of Attachment to secure these funds pending disposition of this action.

### DISCUSSION

**I. Personal Jurisdiction**

As an initial matter, Defendants assert that this Court does not have personal jurisdiction over the out-of-state

---

[8] With respect to his obligations under the April 5, 2012 agreement, Schoenbach also signed an Attorney Escrow Agent Agreement which confirmed his obligations. (Id. at ¶ 42-44; Ex. D, E.)

defendants. (Def.'s Opp'n. Mem. at 7-9.) In a diversity case,[9] personal jurisdiction is governed by the law of the state in which a federal court sits. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963). Thus, the personal jurisdiction inquiry is a two-part analysis that asks (1) does the long-arm statute of the state in which the federal court sits reach the foreign party and (2) if so, whether the exercise of jurisdiction violates traditional notions of fair play and substantial justice. See World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

First, the New York long-arm statute provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . commits a tortious act within the state . . . ." N.Y. C.P.L.R. § 302(a) (McKinney 2012). Unlike the long-arm statutes of some other states, the New York provision "does not coincide with the limits of the Due Process Clause" and is a more limited grant than the Constitution permits. Best Van Lines, Inc. v. Walker,

---

[9] Plaintiffs invoke jurisdiction under 28 U.S.C. § 1332(a)(2) and allege that complete diversity exists between all plaintiffs and all defendants. (Compl. ¶ 13.)

490 F.3d 239, 244 (2d Cir. 2007). Under the New York statute, jurisdiction over out-of-state defendants can be obtained upon a showing that an agent "engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [] defendants and that they exercised some control" with respect to his activities. Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44 (N.Y. Ct. App. 1988).

Plaintiffs' allegations that Defendant Lawrence H. Schoenbach ("Schoenbach") "is so closely associated with Leon that his law firm is listed as part of the 'Team' described on Inah's website," as well as Schoenbach's significant actions on behalf of Defendants, satisfy the jurisdictional requirements of C.P.L.R. § 302(a). (Compl. ¶ 3.) Therefore, the Court concludes that the New York long-arm statute permits personal jurisdiction over Defendants.

Second, a party must have sufficient minimum contacts with a forum such that the exercise of jurisdiction does not violate traditional notions of fair play and substantial justice. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945); Metro. Life Ins., 84 F.3d at 567. The extent of the contacts with the forum determines whether the Court may exercise general or specific jurisdiction. General jurisdiction flows from broad business contacts that permit a court to exercise its power even where those contacts

are unrelated to the case at bar, while specific jurisdiction is based on contacts related only to the instant dispute. Metro. Life Ins., 84 F.3d at 567-68; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9 (1984).

Defendants argue that their only contacts with New York consist of "wiring money into New York State." (Defs.' Opp'n. Mem. at 7.) Whether this alone would be insufficient to establish the requisite minimum contacts is irrelevant. In the same submission, Defendants oppose the granting of a preliminary injunction on the grounds that "Mr. Schoenbach has been representing Mr. Leon, the principal of Inha and Internations, for several years on other matters, and the proposed restraining order would effectively mean that Mr. Leon and his companies could not transact any future transactions in New York State." (Id. at 5.) Continuous representation for a period of years through an agent located and licensed in the state of New York, as well as the intent to continue transacting business into and out of the state, constitutes "continuous and systematic general business contacts" with the forum to afford general jurisdiction. Metro. Life Ins., 84 F.3d at 568. Thus, the Court finds that it may exercise personal jurisdiction over the out-of-state defendants in this case.

## II. Application for Attachment

The Federal Rules of Civil Procedure provide that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This Rule permits the attachment of assets as defined by state law in the course of a federal proceeding, "however designated and regardless of whether state procedure requires an independent action." Fed. R. Civ. P. 64(b). Under New York state law, "[a]n order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when . . . the defendant is a nondomiciliary residing without the state." N.Y. C.P.L.R. § 6201 (McKinney 2012).

### A. Legal Standard

To obtain an attachment in New York, a plaintiff must establish that (1) there is a valid cause of action; (2) it is probable the plaintiff will succeed on the merits; (3) one or more grounds for attachment exist pursuant to C.P.L.R. § 6201; and (4) the amount demanded from the defendant exceeds the counterclaims asserted against plaintiff. See Moran v. Arcano, No. 89 Civ. 6717, 1990 WL 96761, at *1 (S.D.N.Y. July 3, 1990) (citing N.Y. C.P.L.R. § 6212(a)).

8

## B. Required Showing Under C.P.L.R. § 6212(a)

Plaintiffs argue that they have established all elements under the C.P.L.R. necessary for the Court to grant an attachment. In particular, Plaintiffs urge that: (1) the allegations in their Complaint are sufficient to state a cause of action; (2) they are likely to succeed on the merits of their claims; (3) C.P.L.R. § 6201(1) provides a valid ground for attachment because Plaintiffs seek a money judgment against one or more nondomiciliary defendants; and (4) there are no known counterclaims asserted by Defendants. Having reviewed the materials submitted by the parties and with the benefit of oral argument, the Court finds that Plaintiffs have demonstrated sufficient grounds for an attachment pursuant to C.P.L.R. § 6212 of any funds in which Leon, Inah, and/or Internations have an interest and that are presently within the state of New York.[10]

At this stage in the proceedings, "all legitimate inferences should be drawn in favor of the party seeking the attachment." JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Services, Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). Assuming the validity of the allegations in the

---

[10] CPLR § 6202 provides that "[a]ny debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment." N.Y. C.P.L.R. § 6202. CPLR § 5201, in turn, applies to any debt or property against which a money judgment could be enforced. C.P.L.R. § 5201(a), (b) (McKinney 2012).

Complaint, Plaintiffs have pled sufficient facts to demonstrate a cause of action and a likelihood of recovery of the amount sought should their claim succeed. Moreover, no counterclaims have been filed against Plaintiffs as of the date of this order. Therefore, Plaintiffs have established the first, second, and fourth prongs under C.P.L.R. § 6212(a).

The final element requires "that one or more grounds for attachment provided in [C.P.L.R.] section 6201 exist." C.P.L.R. § 6212(a) (McKinney 2012). Here, Plaintiffs urge that C.P.L.R. § 6201(1) provides a valid ground for attachment. This provision permits attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state," C.P.L.R. 6201(1) (McKinney 2012), and serves "two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state." ITC Entertainment, Ltd. v. Nelson Film Partners, 714 F.2d 217, 220 (2d Cir. 1983); Ames v. Clifford, 863 F. Supp. 175, 177 (S.D.N.Y. 1994); see also Elton Leather Corp. v. First General Resources Co., 138 A.D.2d 132 (App. Div. 1988).

The analysis under this provision differs depending on whether a court has jurisdiction over a defendant. See Bank of China, New York Branch v. NBM L.L.C., 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) ("Under New York law, where jurisdiction over a

10

defendant exists and 'the only purpose for a pre-judgment attachment is security, a different analysis should apply than that used for jurisdictional attachments.'"). Both parties agree that the out-of-state defendants in this case are neither residents nor domiciliaries of New York. As indicated above, the Court also concludes it has jurisdiction over Defendants in light of Defendants' purposeful availment of the benefits of the laws of New York and their systematic and continuous contacts with the state. Where jurisdiction exists over a nonresident, nondomiciliary defendant, an order of attachment requires "an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment." Ames, 863 F. Supp. at 177. Accordingly, the Court must also determine whether Plaintiffs have made this additional showing.

The Court concludes that Plaintiffs have met this burden. In reaching its determination, the Court relies on the documents submitted by Plaintiffs as Exhibits D and E to their motion, which purport to be a signed escrow agreement and a signed e-mail from Schoenbach to Leon confirming a contractual obligation to transfer any funds held in escrow to Plaintiffs should Defendants fail to provide financing by May 3, 2012.[11] Plaintiffs

---

[11] Defendants have not challenged the authenticity of this document, which states: "[I]f [Plaintiff] zinger will not receive the amount of $100,000.00

11

allege they have repeatedly demanded that Defendants return these monies. (See Compl. ¶¶ 45, 49.) Plaintiffs also allege no funds have been released. (Id. at 52.) Further, Defendants have failed to provide any explanation as to why, in light of Plaintiffs' allegations, the escrow account no longer contains the funds transferred by Plaintiffs.[12] Therefore, the Court is satisfied that Defendants' conduct regarding these funds demonstrates a significant risk as to the enforceability of a future judgment. Cf. ITC Entertainment, 714 F.2d at 219 (upholding an order of attachment issued pursuant to § 6201(1) based on sporadic contacts with New York, insufficient assets to satisfy the potential judgment, and questionable business practices); Pena v. Morgan, 149 F.Supp.2d 91, 93-95 (S.D.N.Y. 2001) (ordering attachment to secure a judgment where most of the defendant's assets were outside the state of New York and noting that the "[d]efendant's nonresident status and his evasive response to the motion on this point lead the Court to infer that there is a continuing need for security").

---

and $325,000 and a loan according to the agreement with INAH no later then the 3rd of may 2012 then the escrow agent [Schoenbach] will execute the $150K SBLC immediately and will transfer the funds to zinger." (Mot. for Order to Show Cause, Ex. E.)

[12] The Court bases its finding with respect to the contents of the escrow account on representations made by Defendants' counsel during the September 19, 2012, hearing. Although Plaintiffs conveyed $150,000.00 to be held in escrow, Defendants' counsel represented that only $45.00 remained in the account. (Order to Show Cause Hr'g Tr., Sept, 19, 2010, at 3.)

12

Accordingly, since Plaintiffs have made the additional showing required under New York law, the Court concludes that C.P.L.R. § 6201(1) provides a valid ground for attachment.

### C. Additional Requirements

Defendants' objections to the issuance of the attachment are more properly viewed as arguments as to the form of the order – not to the propriety of issuing the order itself. The Court addresses these concerns in fashioning its order.

First, Defendants argue the order improperly seeks to attach all of their assets without specifying an amount. (Defs.'s Opp'n. Mem. at 2.) C.P.L.R. § 6211 provides that "[a]n order of attachment . . . shall specify the amount to be secured by the order of attachment including any interest, costs and sheriff's fees and expenses . . . ."[13] Plaintiffs responded to Defendants' objection by requesting an attachment in the amount of $1,000,000.00.[14] (Letter from Jeffrey E. Gross (September 24, 2012).) The Court agrees that this figure is sufficient to secure a future judgment. Therefore, the proposed order will be modified to seek an attachment of assets totaling $1,000,000.00.

---

[13] Orders issued with notice are subject to the same requirements. N.Y. C.P.L.R. § 6210 (McKinney 2012) ("The contents of the order of attachment granted pursuant to this section shall be as provided in subdivision (a) of section 6211.").

[14] Plaintiffs based this calculation on the sum of the amounts Plaintiffs allege they were entitled to receive under the April 2012 agreement, as penalties for defaults, and from the proceeds of a standby letter of credit. (Letter from Jeffrey E. Gross (September 24, 2012).)

13

Second, any significant undertaking appears unnecessary. Defendants maintain that only limited funds remain in escrow and Defendants' counsel has represented that the only assets in New York owned by the out-of-state Defendants is approximately $100 in a dormant bank account. (Def.'s Opp'n. Mem. at 9.) However, state law requires that "[o]n a motion for an order of attachment, the plaintiff *shall* give an undertaking, in a total amount fixed by the court, but *not less* than five hundred dollars . . . ." N.Y. C.P.L.R. § 6212 (McKinney 2012) (emphasis added). Therefore, pursuant to this section the Court determines that an undertaking equal to $500.00 is sufficient.

### III. Disclosure Under C.P.L.R. § 6220

Defendants also urge that Plaintiffs seek burdensome discovery to which they would be entitled only if Plaintiffs actually obtain a judgment. (Defs.' Opp'n. Mem. at 8.) This is incorrect. A party may not seek disclosure for the purpose of establishing sufficient grounds for an order of attachment. See Carteret Sav. Bank, F.A. v. E.W. Associates Ltd. P'ship, 143 A.D.2d 612 (App. Div. 1988); Heller Fin., Inc. v. Wall St. Imports, Ltd., 529 N.Y.S.2d 969, 970-71 (N.Y. Sup. Ct. 1988). "However, the existence of a valid order of attachment is a mandate for a sheriff to levy upon assets of a party. So long as the order is outstanding and unsatisfied, a plaintiff is entitled to learn of assets to enable a sheriff to seize

14

sufficient property to comply with the order." Heller, 529 N.Y.S.2d at 971.

Thus, "at any time after the granting of an order of attachment . . . the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant." N.Y. C.P.L.R. § 6220 (McKinney 2012). The Court finds that Plaintiffs have demonstrated the need to better assess Defendants' asset holdings and ability to satisfy a judgment. As such, Plaintiffs are entitled to disclosures sufficient for this purpose.

## CONCLUSION

After reviewing the parties' submissions and considering the arguments advanced by counsel before the Court on September 19, 2012, the Court concludes that Plaintiffs should be granted an Order of Attachment pursuant to N.Y. C.P.L.R. § 6211 and are entitled to disclosure under N.Y. C.P.L.R. § 6220. The parties are directed to the attached Order to this effect.

SO ORDERED:

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         October 3, 2012

15