UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ETALON IMOB S.R.L. and MAOR ZINGER,

                                    12-CV-6868 (BSJ) (AJP)

               Plaintiff,              **REPLY**
                                        **MEMORANDUM OF**
   -against-                    **LAW IN SUPPORT OF**
                                        **MOTION TO DISMISS**

LAWRENCE H. SCHOENBACH, and THE LAW
OFFICES OF LAWRENCE H. SCHOENBACH,
PLLC, INAH HOLDINGS, LLC, INTERNATIONS
ASSETS & HOLDINGS, LLC, and RICARDO
LEON,

               Defendants.
-----------------------------------------------------------------X

*Preliminary Statement*

     Defendants Internations Assets & Holdings, LLC, ("Internations"), Inah

Holdings, LLC ("Inah"), Ricardo Leon ("Leon"),  Lawrence H. Schoenbach, and

his law office, the Law Offices of Lawrence H. Schoenbach, PLLC (jointly

"Schoenbach") submit this reply memorandum of law in support of their motion to

dismiss the complaint by the Plaintiffs, Etalon Imob S.R.L. ("Etalon") and Maor

Zinger ("Zinger").  The Defendants also submit this memorandum in opposition to

the Plaintiffs' cross-motion to compel and for contempt.

*Argument*

1.  *The Court Lacks Subject Matter Jurisdiction.*

The Plaintiffs argue that there is complete diversity because the Plaintiffs are

aliens and the Defendants are citizens of Florida or New York.  The basis for the

position is that Zinger is allegedly a citizen of Romania and Israel.  (Zinger

Declaration ("Dec.") ¶ 2; Docket ("Dkt.") # 26.)

Importantly, Zinger does not dispute any of the detailed facts set forth by the

Defendants in their motion about Zinger's domicile or his stated intent to live in

Florida with his family and thereby concedes those facts to be true.  Instead, Zinger

provides the Court with his passports and his 2008 visa, and argues that these

documents alone are sufficient to support diversity jurisdiction, notwithstanding

the fact that he is in fact domiciled in Florida.  Thus, the issue for the Court is

whether a person who is actually domiciled in Florida but has a foreign passport

can be of diverse citizenship to defendants who are also domiciled in Florida.

To support jurisdiction under these circumstances, Zinger cites a decision by

Judge Connor in *Kato v County of Westchester*, 927 F. Supp 714 (S.D.N.Y. 1996),

which does support Zinger's position.  In that decision, Judge Connor noted that it

was counterintuitive that a person who is clearly domiciled in this county can claim

alien citizenship for purposes of diversity jurisdiction, but nevertheless decided

that the statute required that conclusion. *Id.* at 717 ("We acknowledge that it is somewhat counterintuitive that plaintiff can live in the United States for 27 years, have strong ties to his New York community, display every indication of wanting to remain in the United States indefinitely, if not permanently, and yet invoke diversity jurisdiction on the ground that he and his decedent are aliens.")

Defendants respectfully submit that Judge Connor incorrectly applied the diversity statute's provision regarding aliens by using an exception to jurisdiction as a basis for finding jurisdiction. The relevant provision states that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- . . . .

> (2) citizens of a State and citizens or subjects of a foreign state, *except* that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State.

18 U.S.C. § 1332(a)(2) (emphasis added).

The statutory exception to the Court's diversity jurisdiction was enacted by Congress in 1988 for the purpose of *narrowing*, not expanding, the Court's diversity jurisdiction. *Marcus v. Five "J" Jewelers Precious Metals Indus.,* 111 F. Supp. 2d 445, 448 (SD.N.Y. 2000) (citing case law and legislative history). Under these circumstances, it makes little sense that a provision designed to narrow the District Courts' original jurisdiction can be used to add to the District Court's

3

jurisdiction, especially where the overriding purpose of diversity jurisdiction -- the availability of a federal forum for a non-resident plaintiff -- is not furthered by the assertion of subject matter jurisdiction.   Since the Second Circuit and the Supreme Court have not addressed this issue, we respectfully submit that the "counterintuitive" conclusion urged by the Plaintiffs ought to be rejected.

2. *The Complaint Fails to State a Claim for Relief for Specific Performance.*

The Plaintiffs claim that the MOU is not a personal services contract and on that basis argue that they are entitled to specific performance.  This argument should be rejected because the Plaintiffs' own pleadings and the MOU show that Etalon and Zinger hired Internations for the purpose of using Leon's services and assistance in seeking financing.

The *first* paragraph of the Complaint states that the Plaintiffs hired Leon to obtain his assistance to raise financing:  "They shared their business plans with Ricardo Leon, a Florida-based businessman who claimed he had experience helping entrepreneurs fund projects through his network of relationships with global financial institutions."  (Complaint ¶ 1; Dkt. #1.)  In addition, the MOU provides the same thing:  "The parties have entered into this joint venture for the purpose of raising funds by and through the Facilitator [defined as Internations], and the Facilitator, and the Facilitator's business contacts. . . ." (MOU ¶ 8; attached as Complaint Exhibit A.)

The Plaintiffs incorrectly claim that the defendants' argument on the personal services issue is based on a "conclusory characterization."  Instead, the defendants' argument is based on the Complaint and the MOU, which is attached to the Complaint, and therefore should be reviewed for purposes of this motion to dismiss.  *See, e.g., Yak v. Bank Brussels Lambert, BBL (USA) Holdings Inc.*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.") (citation and internal question marks omitted).  The Plaintiffs are simply wrong is arguing that the contract cannot be reviewed on this motion.  (*See* Plaintiffs' Mem. at p. 11.)

The cases cited by Plaintiffs on the personal services issue are simply irrelevant to this motion.  In both *BT Triple* and *NML Capital*, the decisions did not address the issue of whether specific performance of a personal services contract was a proper remedy.  Indeed, those cases, which involve a nationwide bank's obligations under a commitment letter and a foreign county's obligations to pay on its bonds, have nothing to do with the facts of this case.

3. *The Complaint Fails to State a Claim for Breach of Contract to the Extent it Claims That Defendants Who Are Not Parties to the Contract Are Liable For Breach of Contract.*

The Plaintiffs argue that contract claims can be stated against defendants who were not parties to the MOU.  Thus, the Plaintiffs argue that they have stated

claims against Leon, Inah and Schoenbach even though the MOU is only between Etalon and Internations. The position is meritless, as a review of the relevant case cited by the Plaintiffs make clear.

In *Horsehead Indus. v. Metallgescellschaft AG,* 239 A.D.2d 171 (1st Dept. 1997), the plaintiff alleged that a parent company was the alter ego of a wholly-owned subsidiary and that the parent company was in control of the negotiations of the contract at issue and took the actions that breached the subsidiary's contractual obligations. Under those circumstances, the plaintiff could state a claim against the parent corporation.

Yet here, in contrast, the Plaintiffs' Complaint contains none of those alter ego claims. Thus, no claim can be asserted against Schoenbach or his law office for breach of the MOU. Indeed, no claim against Leon can be asserted for breach of the MOU without completely disregarding settled law on the limited liability of a shareholder or member for the obligations of a corporation or limited liability company. In other words, the Plaintiffs' argument boils down to the untenable and unsupported position that, based merely on a company's breach of its contractual obligations, is member or shareholders are personally liable for the breach. Since limited liability companies are formed for the purpose of limiting the owner's liability, the Plaintiffs argument about Leon's personal liability for an Internations contractual obligation must be rejected.

4. *The Complaint Fails to State a Claim for Fixed Damages Because That Claim is an Unenforceable Penalty.*

The Plaintiffs seek to avoid the issue of liquidated damages by suggesting that the issue is ripe for determination on a motion to dismiss.   The argument should be rejected because the Complaint does not allege or set forth any plausible theory to support the conclusion that $425,000 bears a reasonable proportion to the amount of the $100,000 loss on the Loan Agreement.

The amount of the loss on the alleged breach of the Loan Agreement, which is also attached to the Complaint, is easily determined to be the amount of the loan, *i.e.,* $100,000.   The Plaintiffs cannot and do not allege that those damages are "difficult" to calculate and additional damages are on their face punitive.  Nor can the Plaintiffs boot-strap other claims under other contracts or legal theories to make the damages provisions sound reasonable because the issue of law for the Court is whether the contractually-provided damages set forth in the Loan Agreement are a penalty or a reasonable attempt at measuring damages for a breach of that contract.  Since the amount of the fixed or "added" damages for failure to repay the $100,000 note amount to 4.5 times the damages flowing from the breach, the Court should determine that as a matter of law no plausible claim has been set forth.

The Plaintiffs' only substantive response to this point is that:  "Plaintiffs will be able to present evidence that the $425,000 in damages is reasonably

proportionate to the damages it [sic, they] expected to incur at the time of entering into the Loan Agreement." (Mem. at pp. 13-14.; Dkt # 35.)   Conclusory allegations, however, are no substitute for setting forth a plausible claim for relief,[1] and here, the Complaint and the Plaintiffs' opposing papers utterly fail to provide any basis for a theory that the breach of the $100,000 Loan Agreement could yield additional damages reasonably estimated to be 4.5 times that amount.  Since the damages are obviously a penalty, the Court should dismiss this claim.

> 5. *The Complaint Fails to State A Claim Against the Escrow Agent For Disbursing Funds Because the Escrow Agreement Specifically Authorizes the Challenged Transfers and His Duty as a Fiduciary Only Extended to the Provisions Set Forth in the Escrow Agreement.*

Once again, the Plaintiffs ask the Court to simply disregard the plain terms of the contracts that they attached to their Complaint.  The relevant paragraph of the Escrow Agreement unambiguously directed Schoenbach to disburse funds at the sole direction of Internations.  It provides:

> "That Lawrence H. Schoenbach, Esq. and the Law Offices of Lawrence H. Schoenbach, PLLC, acting as the Attorney Escrow Agent for the transaction, shall act *only* in accord with the written instructions of Inah Holdings, LLC and will distribute said funds according to those written instructions for the purpose of acquiring the 25 MIL instrument."

Escrow Agreement ¶ 4; attached as Complaint Exhibit D (emphasis added).   The Plaintiffs argue, despite this clear language, that that the final prepositional phrase "for the purpose of acquiring the 25 MIL instrument" operates to create a

---

[1] *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007).

limitation on the Escrow Agent's duty.  The Plaintiff's "construction" of this prepositional phrase, however, is manifestly silly because it would render meaningless the provision's express authority given to the Escrow Agent to disburse funds at the sole discretion of Inah.  Since the Court should reject a construction that makes the provision meaningless,[2] the Plaintiffs' argument should be rejected.

The Court should also reject the Plaintiffs' attempts to manufacture a generalized "fiduciary" obligation beyond the one set forth in the Escrow Agreement.   As we pointed out in the opening memorandum of law, the Escrow Agreement is a contract and it "necessary follows that plaintiffs cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract."  *Egnotovich v. Katten Muchin Zavis & Roseman*, 18 Misc 3d 1120A, 856 N.Y.S.2d 497, 2008 N.Y. Misc. Lexis 196 at * 6 (Sup. Ct. N.Y. 2008) (citing cases), *aff'd* 55 A.D.2d 462 (1st Dept. 2008) (breach of fiduciary duty claim properly dismissed because plaintiff pointed to no provision in the escrow agreement the escrow agent allegedly breached).  Accordingly, the plaintiffs' attempts to create some generalized fiduciary duty owed to them by Schoenbach must fail.

---

[2] *See, e.g. Post v. Killington*, 424 Fed. Appx. 27, 2011 U.S. App. Lexis 11121 at * 5 (2d. Cir. June 1, 2011) ("We assume the parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless.")

6. *The Fraud Claims Are Insufficient Because They Fail to Allege the Circumstances of the Alleged Fraud With Particularity.*

The Plaintiffs effectively concede that the Complaint does not satisfy the requirements of Rule 9(b) by failing to address the issue of particularity or of lumping the defendants together in the Complaint.  The purpose of the particularity requirement is to require a plaintiff to provide specific facts about who allegedly said what to whom, and as noted in the opening memorandum of law, that requirement is not satisfied merely by lumping defendants together in group allegations.

In addition, the Plaintiffs' argument (at page 17 of their memorandum) that "Leon promised he could find financing for Plaintiffs" is precisely the type of statement that is insufficient as a matter of law because it is merely a promise to carry out a contractual obligation in the future, not a statement of existing fact. Similarly, the Plaintiffs' claims that Schoenbach promised to release escrow funds and that Leon, Internations and Inah concealed "their true intent" fail to state a fraud claim because those allegations merely recast contractual obligations in the language of fraud, which is insufficient.

7. *The Conversion Claim is Insufficient As a Matter of Law.*

The conversion claim is also a recast of a breach of contract claim in the language of tort.   Since a conversion claim based on the breach of an existing contractual obligation is insufficient, the conversion claim should be dismissed.

As with the rest of the Complaint, the Plaintiffs simply fail to come to grips with the fact that they attached the MOU, the Loan Agreement and the Escrow Agreement to their Complaint; that as a matter of law the Court can and must review those contracts on a motion to dismiss; and that a contract claim cannot be merely converted into a tort by claims that contractual obligations were "tortuously" or "fraudulently" breached.

8. *The Complaint Should Be Dismissed Against Leon Because He Was Not Properly Served With Process.*

The Plaintiffs misinformed the Court about their lack of knowledge of Leon's residence when they commenced this action, claiming that they did not know where he lived. That was false; indeed, Zinger does not deny that he spent a month this year in Switzerland with Leon. And yet the Plaintiffs seek to use the Court's permission to serve the attachment papers by email (a permission obtained under false pretenses) as an excuse for ignoring the Hague Convention. Since compliance with the Hague Convention is mandatory, the fact that Leon learned of the existence of the action and submitted a declaration on his behalf does not cure this defect, a defect that the Plaintiffs created themselves when they misrepresented facts to the Court about where Leon lived.

9. *The Cross-Motion for Contempt Should Be Denied.*

The defendants' motion for a protective order and the cross-motion to compel and for contempt have been resolved or rendered moot by Magistrate

11

Judge Andrew J. Peck.  On November 19, 2012, Magistrate Judge Peck entered the

Protective Order (Dkt. # 41) and at a conference before the parties directed that, in

the light of the entry of the Protective Order, the defendants were directed to

produce unredacted documents by November 30, 2012.  Accordingly, those parts

of the pending motions have been resolved.

To the extent that the Plaintiffs continue to claim that the defendants

violated the Court's Order, dated October 3, 2012, to produce documents, that

argument is meritless.  The defendants sought from the Plaintiffs and from the

Court in advance of their document production a protective order, which is a

standard and typical practice in this Court.  When the plaintiffs refused for no

reason to enter into or even consider a protective order, the defendants filed a

motion for a protective order and produced responsive documents in redacted

form.  The Court's October 3rd Order did not address the issue of a protective

order, and the defendants acted appropriately and reasonably under the

circumstances.  They did not violate the Order.  Therefore, to the extent that the

plaintiffs continue to press the cross-motion, it should be denied.

## *Conclusion*

Since the Court lacks subject matter jurisdiction, the Complaint should be

dismissed.  In the alternative, the claims in the Complaint are insufficient as a

matter of law and must be dismissed.  Furthermore, Leon has not been properly

served with process in accordance with the Hague Convention, and all prior orders

issued by the Court must therefore be vacated as to him.  Finally, the cross-motion

should be denied.

Dated:  November 26, 2012

*s/NBS*

_____

Nathaniel B. Smith