```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   ETALON IMOB S.R.L., ET AL.,
 4                Plaintiffs,
 5          v.                            12 CV 6868 (BSJ) (AJP)
 6   LAWRENCE H. SCHOENBACH, ET
     AL.,
 7
                 Defendants.
 8
     ------------------------------x
 9                                        New York, N.Y.
                                          November 19, 2012
10                                        12:35 p.m.
11   Before:
12                    HON. ANDREW J. PECK
13                                         Magistrate Judge
14                       APPEARANCES
15   VANDENBERG & FELIU, LLP
          Attorneys for Plaintiffs
16   BY:  RAYMOND L. VANDENBERG
             KATHLEEN GARDNER
17
     NATHANIEL B. SMITH
18        Attorney for Defendants
19
20
21
22
23
24
25
```

1                (In open court)

2                THE COURT:  Let me note for the record -- and I'm not

3    sure if Mr. Smith has informed plaintiff's counsel -- but he

4    was an associate with me and worked with me when we were both

5    at the Paul, Weiss, Rifkind law firm.  He has had two cases in

6    front of me that I can recall since then.  I have not recused

7    in those.  I don't plan to recuse in this one.  But either side

8    can make whatever motion or do whatever they think necessary,

9    if anything, but I do want to have that on the record.

10               All right.  I think we have to do two things here

11   today.  One is deal with the protective-order-related questions

12   and the other is deal with setting a schedule for discovery in

13   this case and other deadlines.

14               Should we set the schedule first or deal with the

15   protective order issue first?

16               MR. VANDENBERG:  Your Honor, Raymond Vandenberg for

17   the plaintiffs.

18               I guess your Honor is aware that there are still

19   motions outstanding, dispositive motions in addition to the

20   protective order.

21               THE COURT:  Yes.  The dispositive motion is the

22   jurisdictional motion.  It is my practice accepting cases that

23   it is clear from the motion are sort of dead, bang, can't lose

24   motions that discovery will go forward.

25               First of all, the motion is a jurisdictional one.  So

1   that if it turns out that there is an issue as to the residence
2   or the citizenship, whatever, of the plaintiff, then there
3   still would have to be discovery. It would just be across the
4   street in state court or whatever.
5         I guess the only other thing I would say is that for
6   both sides you fight about jurisdiction and you're wrong -- I
7   guess if the court rules incorrectly and says there's
8   jurisdiction where there isn't, you waste the fact that you may
9   have done a lot of not only discovery but potentially trial,
10  etc., all of which will then get tossed out by the circuit. So
11  there is something to be said for if you're not sure of the
12  outcome and you want to be safe deciding that you'd rather do
13  the same thing in state court. But to the extent that you want
14  to be here, you're here and you know whatever happens with that
15  motion happens. It is a dispositive motion. So that is before
16  Judge Jones who does not refer dispositive motions.
17        Obviously if you all consent to have the case in front
18  of me for all purposes pursuant to 28 U.S. Code Section 636(c)
19  which requires unanimous consent, then I would deal with the
20  motion, etc.
21        MR. VANDENBERG: We're not prepared to do that, your
22  Honor.
23        But I would suggest that we look at the schedule
24  first. From the plaintiffs' standpoint, we'd like to proceed
25  as rapidly as possible. We have an order of attachment here

1    which is the first order of business.
2             THE COURT:  So hopefully you've each read my chambers
3    rules or operating procedures, whatever they're officially
4    called, and you know you're in a, in essence, rocket docket.
5             How long do you all think you need for discovery?
6             My normal position for a case like this would be to
7    say three months, maybe four months.  But you all tell me if
8    you want something greater or lesser.
9             MR. VANDENBERG:  From the plaintiffs' point of view
10   we'd like to move it rapidly.
11            My own situation is such that I have a trial in state
12   court across the street in the middle of January which is going
13   to take up a lot of my time between now and then.  So I would
14   suggest something sort of towards the middle of April as a
15   termination date for discovery in this case or end of April.
16            THE COURT:  That's more like five-and-a-half, six
17   months, not four.  And the good news or bad news is when you
18   have a colleague sitting next to you, I assume that that person
19   can cover while you're on trial.
20            Mr. Smith, what's your thoughts?
21            MR. SMITH:  I hear what your Honor is saying about
22   wanting to go forward with discovery notwithstanding a
23   dispositive motion.  And given plaintiffs' request to put this
24   thing into April, I don't have a problem with that.  I
25   understand the court might.  So then I think we ought to just

1   go for four months as a -- as an objective with the
2   understanding that -- I mean don't have an objection,
3   obviously, as a defendant, to allowing Mr. Vandenberg --
4           THE COURT:  To six years for discovery.
5           MR. SMITH:  -- to harass somebody else during the
6   month of January.  But nevertheless -- so that's my position on
7   that.
8           THE COURT:  So, discovery cutoff will be March 29.
9           Are we going to have experts -- and that, by the way,
10  is a four, almost four-and-a-half month period.
11          MR. VANDENBERG:  I appreciate that, your Honor.
12          THE COURT:  That would include experts.  So my
13  question is are you going to have experts or do you think you
14  might?  And if so, simultaneous reports, sequential?  What's
15  your pleasure?
16          MR. VANDENBERG:  At the moment, I can't say
17  definitively that we will or won't have experts.  I would doubt
18  it based on what I know about the case so far.
19          THE COURT:  Mr. Smith.
20          MR. SMITH:  I'm not quite sure I agree with
21  plaintiffs' counsel.  There are some -- there's likely to be
22  some sophisticated jargon that may require explanation.  And I
23  don't know whether or not Mr. Leon, who is the principal
24  defendant, will be able to provide that.  And so there is a
25  possibility that an expert would be helpful in this case to

1   explain some of the practices for delivering international

2   credit facilities and what those terms actually mean, actually,

3   might be an issue.

4           THE COURT:  So we'll set the expert reports as

5   follows.

6           February 15 for the plaintiff.  And March 1 for the

7   defendant.  And if there's a need for rebuttal report, probably

8   be March 8.  Whatever.  As long as you get everything done by

9   March 29.

10          How soon can you all do mandatory initial disclosures

11  under 26(a)(1)?

12          MR. VANDENBERG:  I think we can do that within the

13  next three weeks.

14          THE COURT:  December 7 -- I'm sorry.

15          Mr. Smith, does that work for you?

16          MR. SMITH:  That's fine, your Honor.  Thank you.

17          THE COURT:  Are there going to be issues as to

18  electronic disclosure in this case?  Is there going to be

19  electronic discovery?

20          MR. VANDENBERG:  Well there is electronic discovery

21  insofar as e-mail has been used.  I don't see it as being a

22  huge volume.  Haven't gotten into it yet.

23          MR. SMITH:  I agree with that.  There are some

24  e-mails, communications between the principal plaintiff and the

25  principal defendant and some of the players.  But I think we

1    could at least initially agree to produce hard copies.  And if
2    there's an issue about the authenticity --
3            THE COURT:  Hard copies if there are more than 25 to
4    50 are probably a mistake.  But why don't you all talk about
5    it.  I think from what you're saying it's mostly stuff going
6    back and forth between the plaintiff and the defendant.  So I'm
7    not going to have you fill out the joint electronic discovery
8    submission form.  But, you should look at it.  It's Exhibit B.
9    It's on the court website as part of my rules package.  Look at
10   it.  Guide yourself through that.  And don't have a train
11   wreck.  When you start talking about printing to paper, I start
12   worrying.
13           Next, I'd like to get a protective answer or a without
14   prejudice answer, however you want to put it, from the
15   defendants so that any affirmative defenses or whatever are on
16   the table for discovery.  It's obviously without prejudice to
17   the motion to dismiss.
18           How soon can you do that, Mr. Smith?
19           MR. SMITH:  Let me just understand what you're saying,
20   your Honor.  You want me to file an answer as if I didn't have
21   a motion to dismiss with the understanding that I'm not waiving
22   any rights?
23           THE COURT:  Correct.
24           MR. SMITH:  Two weeks.
25           THE COURT:  December 3.

1              Is there likely to be any amendment to the pleadings
2     on the plaintiffs' side?
3              MR. VANDENBERG:  Not likely.
4              THE COURT:  I'm not going to give a date, therefore,
5     for amendments but I don't expect any absent good cause and not
6     too late in the case or you won't be able to do it.
7              Finally, it's my practice to give the parties two
8     paths to go down at the end of discovery so you don't have to
9     do a pretrial order if there is a case dispositive summary
10    judgment motion filed.  So by April 1 you will notify me and
11    the district judge as to whether you're moving for summary
12    judgment or not.  Comply with any premotion requirements of the
13    district judge.
14             And if there is going to be a summary judgment motion
15    it will be due April 22.  If there is no summary judgment
16    motion, pretrial order will be due April 22.  If there is a
17    summary judgment motion, the pretrial order is automatically
18    deferred until 30 days after the court rules on the summary
19    judgment motion.
20             That I think takes care of scheduling.  Other than to
21    decide when we'll have our next status conference.  We'll do
22    that at the end when we see where we are on the protective
23    order motion.
24             My inclination, depending on -- and I don't remember
25    if there is a copy -- do I have a copy of the subpoenas

1   attached to the moving or opposition papers?

2           MR. VANDENBERG:  Your Honor, there were no subpoenas.
3   The protective order motion was made in regard to documents
4   that were produced pursuant to the judge's order in her
5   attachment order.

6           THE COURT:  But I thought the issue -- and I will say
7   I read the motion a while ago and then trying to get you all in
8   here because of Sandy and everything else my memory with
9   multiple cases on the docket may be confusing this with another
10  one, but I thought the issue was the ability of a party, to
11  wit, the plaintiff, to use information gathered from here in
12  contacting -- which I took to mean subpoenas -- nonparties.  Am
13  I totally misremembering things?

14          MR. SMITH:  Not totally, your Honor.  There was no
15  subpoena issued but there was, on my client's behalf, a request
16  for protective order which is I think a typically -- I'm not
17  going too far saying this is a pretty standard thing.

18          In this case, Mr. Leon submitted a declaration which
19  said I have some real concerns about Mr. Zinger getting my
20  personal contact information for basically two reasons.  One,
21  while I was working to try and get him financing, he was
22  basically snooping and trying to intercede, find out who my
23  banking contacts were over my objection.  And then in the runup
24  to the filing of this lawsuit, he threatened to put him out of
25  business.  So, those two facts plus the fact that a protective

1    order -- this type of protective order -- or protective orders
2    generally are often given in this courthouse for business
3    information.
4              THE COURT:  Protective order is, obviously, fairly
5    standard.  One that prevents subpoenaing somebody is not
6    standard.  So, maybe we can just put a pin in this.  But I'm
7    not going to sign the thing that says they got to give you ten
8    days notice and five days response and etc., etc., before they
9    can issue a subpoena to a nonparty.  And if you want to all put
10   a pin in that and just do a standard protective order, we can
11   do that.  If you want me to resolve the matter with finality in
12   the next five to six minutes because I've got a 1:00 committee
13   meeting, we can do that as well.
14             What's your pleasure?
15             For example, if you reveal some information and they
16   think it's related to assets or other things that go to the
17   attachment issue, etc., and they want to serve a subpoena, I
18   might well allow that.  If they want to send a letter saying
19   you should be aware that Mr. Leon is a crook, etc., etc., I'm
20   probably not going to allow that.
21             So what's your pleasure?  You're the movant,
22   Mr. Smith.
23             MR. SMITH:  Well my pleasure would be for the court to
24   sign the protective order as --
25             THE COURT:  That ship has passed.

1                MR. SMITH:  Well then the limitation that the court
2    has suggested makes sense given that the other ship has left
3    the harbor.
4                I need some sort of protection because -- and maybe
5    that's the right way to handle it, is that if they can identify
6    certain assets in New York that could be subject to attachment
7    and they're pursuing that for that purpose, then I don't really
8    have a very good argument.  But if they're sending subpoenas or
9    letters and attaching copies of complaints and saying you
10   know -- ostensibly we have a request for information but really
11   what we want to do is let you know that the guy you're doing
12   business with is a crook, that's the part I'm concerned with.
13               The order of attachment in this case governs securing
14   New York assets.
15               THE COURT:  So then it may be a nonissue.  But I would
16   not -- looking at page four of the requested confidentiality
17   order, I am not inclined to sign after the third line.
18               In other words, everything else in that paragraph up
19   to the point where it then talks about who can see the
20   material, I would probably strike.  I haven't looked in great
21   detail at everything else to see what else is a problem or not.
22               MR. SMITH:  The rest of the protective order, your
23   Honor, is --
24               THE COURT:  Is standard.
25               MR. SMITH:  Is standard.

1          THE COURT:  With that change, does that work,
2   Mr. Vandenberg?
3          MR. VANDENBERG:  Does that include, your Honor, the
4   sentence, "All information designated as confidential under
5   this order shall not directly or indirectly be used, given, or
6   provided to any person or entity other than under the
7   circumstances..."
8          THE COURT:  No.  That sentence would be in because
9   that's still consistent.  And, obviously, I would be doing this
10  without prejudice to seeing what happens as you have to issue
11  subpoenas or otherwise contact people.
12         MR. VANDENBERG:  The first sentence in paragraph seven
13  which starts on the previous page at the bottom, "All
14  information designated as confidential under this order shall
15  be used only for the purpose of the claims and defenses in this
16  case and for no other purpose whatsoever," that's understood.
17  And that's what we do intend to use the information for.  So if
18  that's the condition --
19         THE COURT:  Then the question is -- you may be right
20  that the first full sentence on the top of page four is
21  unnecessary.  But, I was planning on leaving in starting from
22  three lines above subparagraph (a), the sentence that says,
23  "Where a producing party has designated discovery material is
24  confidential," and then dealing with who can see it or
25  whatever.

1             MR. VANDENBERG:  Right.

2             Well, that's fine.  I think -- our concern in dealing

3    with this protective order, and I think our concerns were

4    demonstrated in the response to the court-ordered discovery

5    which redacted much of the important information that was in

6    the bank records.

7             THE COURT:  Our time is short.

8             Do both sides agree?  And we can deal with the issue

9    further in the event you need to subpoena people as witnesses

10   or in terms of assets that --

11            (Pause).

12            That I am going to sign this with striking out from

13   the top of the page starting, "All information," until and then

14   leave in, "Where a producing party"?

15            Are there any other issues in the protective order, or

16   it's otherwise sign-able in this form?

17            MR. VANDENBERG:  No other issues.

18            THE COURT:  Good.

19            I am out of time.  Is there anything else we need to

20   do today other than now that there is a confidentiality order,

21   the redactions in the prior material, that material should be

22   reproduced without redaction except for privilege?

23            MR. SMITH:  I understand that, your Honor.

24            Do we have some sort of understanding about the

25   issuance of subpoenas to third parties?

1           THE COURT:  At the moment issuing a subpoena to a
2    third party would, if it's based on confidential information,
3    violate the use restrictions in the order.  This is without
4    prejudice to seeing where things go.  But I am always readily
5    available to deal with these issues and I don't think they're
6    going to be emergencies as such.  So it doesn't mean I've
7    agreed with you, Mr. Smith.  We're just putting a pin in it and
8    not directly dealing with it, although it's indirectly giving
9    you protection for now.  But it's going to be without prejudice
10   under the case law.  It's not that by signing this I am
11   preventing or creating a higher standard for the plaintiff to
12   move at the appropriate time if they want to issue some
13   financial source or whatever it may be.
14           MR. VANDENBERG:  Understood.
15           MR. SMITH:  Understood.
16           Given that I will produce in unredacted form the
17   documents.
18           THE COURT: How soon?  By next Tuesday, Wednesday,
19   maybe?
20           MR. SMITH:  I hope a week is okay because I'm all
21   jammed up for a week.
22           MR. VANDENBERG:  I think your papers are due on Monday
23   the 26th and the dispositive motions and we'll wait until
24   Tuesday.
25           MR. SMITH:  I have only two hands.

1           THE COURT:  It's Thanksgiving this week.  I know you
2   were flooded out or whatever.  So by no later than next Friday
3   but sooner if at all possible.
4           MR. VANDENBERG:  Thank you.
5           THE COURT:  When do you all want to come back to see
6   me?  I status conference cases regularly.  And if there is a
7   problem, as you can see in reading my rules, if we set
8   something for 30 days out and you have a problem in a week, try
9   work it out; but if not, contact me.
10           So what's your pleasure?  Right after the first of the
11   year?  Something sooner?  Whatever you want.
12           MR. VANDENBERG:  Perhaps because right after the first
13   of the year is when I'm going to be most jammed up we could do
14   something before the end of December.
15           THE COURT:  Pick a date before Christmas.
16           MR. VANDENBERG:  December 21.  Friday.
17           THE COURT:  How about December 19 or 20?
18           MR. VANDENBERG:  Nineteen.
19           MR. SMITH:  At -- any time is fine with me.
20           THE COURT:  The 19th at 3:00.
21           If it turns out you don't need the conference because
22   everything is going smoothly, talk to each other and jointly
23   send in a letter or call my secretary.  I will not cancel a
24   conference when a letter comes in from one that doesn't say
25   it's joined in by everybody because often the person who tries

1  to cancel it is the person who is in default and is trying to
2  duck it.
3          So, consider the 636(c) issue and get back to me
4  jointly at the next conference on that.
5          I also suggest you all talk settlement.  At some point
6  I'm going to be asking, when I have more time, to make sure you
7  really have talked settlement.  And at some point there is a
8  good chance that I'll be bringing you and your clients in for a
9  full blown settlement conference.  But at a minimum, at each
10 conference, I raise with the parties:  Most cases settle, what
11 are you doing in that regard?  And anyone who thinks that they
12 can't begin settlement talks because it shows weakness, this is
13 giving you that cover.  You have to talk.
14         MR. SMITH:  I was going to pick up on that.  I'm
15 willing to sit down any time the court wants to.  I mean I've
16 made requests to try and engage in those discussions.  So far
17 haven't gotten anywhere.  I think if the court scheduled a
18 settlement conference sooner rather than later we might get to
19 the chase here.
20         THE COURT:  Well let's get some offers and responses
21 and we'll talk about it in December.  And think about whether
22 you want to be in the court mediation program, whether you want
23 to go out to a private mediator, or whether you want to do it
24 in front of me or, if you consent to me as the trial judge, in
25 front of one of my colleagues.  But as far as I'm concerned you

CBJ9ETAC

1  only get one judicial settlement conference.  So figure out
2  when you both think is the best time for that.  If you do it
3  early and you don't settle, I'm probably not going to do it
4  again.
5          Thank you.  I'm going to require both sides to
6  purchase the transcript which contains the court's orders.  In
7  addition, you'll be getting a short form scheduling order via
8  ECF.
9          (Adjourned)